The court, please call the next case. 11-11, 11-23, Kathleen Mahoney v. Tom Dennis Johnson and Clyde. Good morning, Your Honors. May it please the court, my name is Dennis Lynch from the Healy Law Firm, and I represent the employee claimant in this case, Kathleen Mahoney. There is only one issue before you today, and that is whether the claimant's accident arose out of her employment when she tripped and fell on a defective mat in the lobby of her office building, which provided the only access route to and from her work. In this case, the facts are undisputed and susceptible to only one inference, and so the standard of review is de novo. As this court is well aware, an accident arises out of the employment if the employee is exposed to a risk distinctly related to her employment, or if she is exposed to a common risk to a greater extent, or more frequently, than the general public. In this case, the claimant was exposed to a risk distinctly related to her employment, a defective mat in the lobby of her office building. The only way for the claimant to get to and from work was to go through the lobby of 180 North LaSalle. The claimant's uncontradicted testimony was that sometimes there were mats present in the lobby, and sometimes there were no mats present in the lobby. On the day of her accident, there were mats, that mat had a bump in it which caused her to trip and fall and injure herself. Because of this defect in this access route to and from her work, there was a special hazard in that usual route, and her accident arose out of her employment. Even if the risk is to be viewed as a neutral risk, the claimant's accident still arose out of her employment because she was exposed to that risk more often than the general public, more frequently than the general public would be exposed to it. Again, it was uncontradicted that these mats were not always present. As an employee in the building, the claimant had to go through the lobby more often than members of the general public. Obviously, members of the general public don't have to go through the lobby at all. She was forced to go through the lobby, including multiple times a day at times. She was more likely to encounter... How would members of the general public get into the building without going through the lobby? How would they go through... How would members of the general public get into the building without going through the lobby? They would have to go through the lobby, certainly. But as an employee in the building, I guess the general public has the option of whether to go into the building or not. She doesn't. Because the mats were not always present, she's much more likely to encounter the mats than a member of the general public because she's forced to go in and out of the building. And how many doors are there to that lobby? There's three doors on LaSalle Street, and there's also an entrance off of Lake Street. So why did she have to use the entrance that she used? She doesn't have to use the entrance that she used necessarily. It is the one that's closest to the elevators to get to her offices. But I don't think that what entrance she used is as important as the fact that she's always going to have to go through the lobby. That's the... What's defective about the lobby? I'm sorry? What's defective about the lobby? The mat that had a bump in it would be the defect. The mat that has a bump in it doesn't cover the entire lobby. It only covers one entrance. Correct, but it's the entrance most likely to be used by those employees. And because she's going in and out of that lobby more frequently than the general public, she's more likely to be exposed to that risk. I want to talk just for a moment about the Illinois Bell decision. Obviously, the employer relies very heavily on it in their brief. In Illinois Bell, there were many more exits. I think the employee testified there were 10 exits. It was a shopping mall. And I think more importantly, there was no central access point at all. There's no area that all employees are going to go through, whereas in this case, the lobby is an area that all employees are going to go through. Also, in Illinois Bell, there wasn't truly a hazard or a defect that the employee encountered. She testified that the floor was waxed or slippery. There was no evidence as to whether that was always the case, whether that was a special case at this point. Here, we have a different situation. We've got a defect on the premises, a bump in the mat, a true special hazard. I think that's what makes this case much more like the Bomarito decision where the employee encountered. Bomarito was the only way into the building for the employee. It was to cross. It was a designated access point. That's right. So the employee was forced to cross the defect in order to get to work. Right. But I think in this case, although there's no mandated, I mean, there's no memo going out saying you must use this access, by necessity the employees are going to have to go through the lobby. There's nothing wrong with the lobby. I mean, let's get this straight. There's something wrong with the mat that's by one of the entrances. There's nothing wrong with the lobby. I mean, this isn't a situation where they have a defective floor because it's overly polished, so it's generalized throughout the lobby. This is a specific defect that's located by a specific entrance. Right. But I think if there's a defective mat in the lobby. The whole lobby is defective? Well, there's a defect that she has to encounter in going to and from work. Why does she have to encounter that if she goes in one of the other entrances? Well, I guess the issue is obviously if she knew there was a defect, she wouldn't have gone that way, but that's the way that she is going. In order to bring it within Bomarito, she has to be forced to cross the defect. That's Bomarito. Forced to cross. No other way in, no other way out. It's not which one's more convenient or less convenient. It's no other way. And in this particular case, there are other ways. And there are other ways that don't expose her to this defect. Well, there's other doors that can be used off of the lobby, but obviously she doesn't know that by going through the one door she's going to encounter the defect. Well, there's no question about that. She doesn't know about it. So I think so long as she's in the lobby of her office building and that's the usual or sole route to get to her office space, that it still comes within Bomarito and the accident still arises out of her employment. Unless there's any other questions, I'll turn it over to counsel. Counsel, please. May it please the Court, Counsel. My name is Marcy Ruiz. I represent the Appellee Law Firm in this matter, Pugh, Jones, Johnson, and Quant. The appellant is asking this Court to reverse the decision of the Industrial Commission and the Circuit Court to find that a slip and fall in a public lobby, not controlled by the employer, is a compensable claim under the Illinois Workers' Compensation Act. It's not. The decision of the Circuit Court and the Workers' Compensation Commission must be affirmed. The incident occurred in the lobby of 180 North La Salle, just one building north of here. It's a 38-story office building. The law firm is located on the 34th floor. It is a very busy building and there's a lot of retail tenants. There's a coffee shop, a sandwich shop, a tailor, a dentist. There is no dispute that the employer did not own nor maintain the lobby. The lease agreement, which is part of the record, supports this. The office of the building and not the employer decided when match should go down and when they should be taken up. Did the employer own the location of the defect in Bomarito? Yes. No, they didn't. It was in a public alley. Well, the difference, that's correct, sir, and I apologize. The facts in Bomarito are that the employer told the employee that they must, all employees, not just Bomarito, that they must enter the premises using the door that was located in the back alley. When Bomarito came into work and came through that door in the back alley, that's when Bomarito was injured. And that's why the court found in Bomarito that it was a compensable case, because the employer directed their employees what door to come in. And we agree with that decision. You know, I think you both misjudged Bomarito. The employer directed the employee to come into the building through one door, and that forced the employee to cross a defective area with an ailment. Yes. Now, it's not a question of whether this person slipped or fell in a lobby. If the entire lobby of that building was defective for, let's say, reasons that the floor was overly polished and she slipped and fell, you wouldn't argue that wasn't compensable, would you? The issue is... Would you? That would take a yes or a no answer, by the way. In the instant case, if the employee slipped... I didn't ask that question. I asked the question, if the entire lobby of that building were defective because the floor lacked a sufficient static coefficient of friction, would you contend that wouldn't be compensable if she slipped and fell on it? I would say that that is not compensable. Why? She has to cross that lobby to get to her office. And as the Court stated in Caterpillar Tractor, the mere fact that duties take an employee to the place of injury and but for the employment, the employee wouldn't be there is not sufficient to give rise to compensation. It's a personal comfort document. She's entitled to go in and out of work. Yes. She can't get to her workplace without crossing this defective condition. And so it becomes bomberito. Bomberito, the only reason why the employee was taken to the LA was because that's how they got into work. But that's not this case. Correct. You're arguing something that really is totally irrelevant. The question is, was the entire lobby defective? Were there other entrances that she could have come in? And was she exposed to a risk greater than the general public? And the answer is, there are several other entrances that the employee could go in the building from. There is three revolving doors on LaSalle Street. There is one door on Lake Street. There is a door from the parking lot, the attached parking lot, into the building. There's also a door from Starbucks into the building. I think the difference is, and what we don't have in bomberito, is the employee testified, Mahoney testified. Well, how did she decide what door to go in and what door to go out of? And it just depends on where she was coming from and where she was going to. And that's how she decided what door to enter and exit. And the employer's human resource manager testified, Marian Rojas, on behalf of the employer. And she was asked, did you tell your employees what door they have to go in and what door they have to go out? And the answer is no. So this case is very analogous to the Illinois Belle. In Illinois Belle, the employee worked in a, at Illinois Belle, in a mall. And she was leaving work and she took the escalator down to the lobby, and in the lobby she slipped and fell. And it was a common area of the lobby. The employer, Illinois Belle, did not control the lobby, did not maintain the lobby. That was in the lease agreement in Illinois Belle. We have those same facts in our case. It was a common lobby. The employer law firm did not control it. They did not maintain it. The lease agreement is in the record, which shows that. In Illinois Belle, the court said that when you fall in a common area not controlled by the employer, it is a non-compensable case. These facts in our case are analogous to Illinois Belle Telephone. Because in Illinois Belle Telephone, the court found that the case was not compensable, the claimant in Illinois Belle Telephone is not entitled to compensation, just like the lower court did in our case. The argument now is, well, the mat is defective. But that doesn't make the case compensable. And the claimant cites not only Bommarito, but he cites Litchfield and Chicago Tribune. All those cases are clearly distinguishable from our case here today. Like we talked about, in Bommarito, the employee was required to use the alley entrance. Her employer told her that's where she had to enter the building. We have no such requirement in our case. Counsel cites the Litchfield case. In the Litchfield facts, Litchfield is a health care provider, and the employee was a nurse's aide. And she came into work, and then she had to leave to go to her car to get something that she needed for work, and she slipped on an uneven sidewalk. And that case was found compensable, not because, I mean, there was a decision, there was a whole discussion about, well, she clocked it in, so does that make her on her job duties and things like that? But the court said that because the employer owned and maintained the sidewalk, and the sidewalk clearly had a defect, one side was raised higher than the other, the court found that the claim compensable because the employer owned and maintained the uneven sidewalk. They had control over the defect. We don't have that in this case. The law firm does not control what goes on in the lobby. The lobby is considered a common area. And the other case that they cited was Chicago Tribune. In Chicago Tribune, the claimant fell in what was described in the decision as a, like a museum in the Chicago Tribune building, traced and visited by the general public. In Chicago Tribune, the court found that claim compensable because she fell in a Chicago Tribune-owned area. Chicago Tribune owned and maintained it. Again, the difference in our case and in this case is she fell in a common lobby area. The law firm did not own or control it. The employer didn't tell the claimant, Ms. Mahoney, you have to walk in the most south door on the LaSalle Street entrance when you come in in the morning. You must go out to lunch. You must use that same door. Those aren't the facts in our case. She, and Ms. Mahoney testified, she could use any door that she chose to ingress and egress from the building, depending on where she was coming from and where she was going. To be compensable under the Illinois Workers' Compensation Act, an injury must arise out of employment and in the course of employment. The claimant and Mahoney failed to prove both of the prongs of that test have been met. She failed to prove that the accident arose out of her employment because she was not exposed to a risk greater than the general public. She was exposed to the same risk as somebody going to the sandwich shop to get a submarine sandwich, somebody going to Starbucks to get coffee, somebody going into the little shop to buy the magazine and the candy bar, somebody, unfortunately, going to get a root canal at the dentist, or somebody going to get their pants hacked. That's the same risk as the general public. And there was nothing inherent in that lobby that made it more hazardous for Ms. Mahoney. Under any standard, whether it be manifest weight of the evidence or de novo, this claim is not compensable. I ask this Court to come to the only decision that is possible, which is to find that the claimant did not sustain a compensable accident under the Illinois Workers' Compensation Act. Thank you very much for your time and your consideration. Thank you. Mr. Butler? Yes, sir. So what distinguishes this case from Illinois Bell is there's only three entrances in this building and there's ten there? Well, I think it's a couple of things. The many more exits in Illinois Bell, the fact that the employee had no consistency on what exit she had used, I think she had said that she had only used that specific exit 20 times. And there's no real central access point. I mean, that's a much bigger area where not all employees are going to cross through. In this case, all the employees of the law firm are going to go through that front lobby by those doors to get to the elevator. Why would they necessarily go by those doors? Because that lobby area is in front of the elevators that gets them to their office. You've got a lobby area, as I recall, to the south, another lobby area with elevators to the north, depending on which floors you're going to. If one were coming from the north going south, even if one were in the higher elevator bank to the south, why wouldn't you enter through the north door? Well, again, it's not necessarily whether or not they would enter through the north door. It's that they would cross that south lobby area by the south doors to get to the elevators. Where was the mat? The mat was a fairly long mat in front of the south door. There are some pictures in the records. Sure. But my recollection is it's a fairly long mat. So depending on which direction the employees coming from are going to will determine which set of doors they enter or they don't enter. They're not forced to use one set of entrance or another because of the elevator bank they work on. Right. Well, right, they're not forced to use any set of doors, but they're going to be in that area of the lobby. If I can address one other thing, Justice Hoffman. Your point about Bomarito, that the entire alleyway was defective. Not the entire alleyway. There was a defect in the alley. Okay. And that was my point, was that obviously the entire alleyway doesn't have a defect. There's debris in the alleyway. But you had to cross it to go through the door. Right. And I think the similar situation is presented here. The employee had to go through the lobby. She encountered a defect during the course of that time. And as a result, the accident arose out of the employment. I believe that the arbitrator got this case correct. The commission is in error. And unless there's any other questions, I would ask that you reverse the commission decision and reinstate the arbitrator's decision. Thank you, Counsel. Thank you, Your Honor. The court will take the matter under advisory of the disposition. As indicated, Justices Polridge and Hudson will actively participate in the decision-making process and have the benefit of these oral arguments. The court is in recess. Subject to call.